UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARTIN WATTERS, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF COTATI, COTATI POLICE DEPARTMENT, DAVID HOUTS, in his individual capacity, ANDREW LYSSAND, in his individual capacity, ERIC BILCICH, in his individual capacity, and DOES 1-50 inclusive,<br><br>    Defendants. | Case No: C 10-2574 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. 29 |

    Plaintiff Martin Watters ("Plaintiff"), now pro se, brings the instant civil rights action under 42 U.S.C. §§ 1983, 1985, and 1986 alleging that the City of Cotati ("City"), the Cotati Police Department ("CPD"), and Cotati police officers Andrew Lyssand and Eric Bilcich and Sergeant David Houts violated his constitutional rights during a drunk driving arrest on June 13, 2009. The parties are presently before the Court on Defendants' Motion for Summary Judgment. Dkt. 29. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion in its entirety for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

#### 1. The Arrest

On June 13, 2009, at around 1:32 a.m., Plaintiff was driving his vehicle, a white Chevrolet truck, in downtown Cotati, California.  Lyssand Decl. ¶ 3, Dkt. 33.  Officer Lyssand observed Plaintiff fail to activate his turn signal while turning, in violation of California Vehicle Code section 22107.  Id.  Officer Lyssand began following Plaintiff and noted that he had failed to come to a complete stop at an intersection, in violation of Vehicle Code section 22450(a).  Id.  He also noted that the truck's estimated speed was 19-20 miles per hour.  Id.  Based on Plaintiff's traffic violations and his low rate of speed, Officer Lysand believed that Plaintiff was intoxicated and decided to make a traffic stop.  Id.

When Officer Lyssand approached the passenger side of the truck, he smelled alcohol on Plaintiff's person and observed that his speech was slurred and that his eyes were bloodshot and watery.  Id. ¶ 4.  Believing that Plaintiff was alcohol impaired, Officer Lysand asked Plaintiff to step out of the vehicle and submit to a series of sobriety tests.  Id. ¶¶ 4-5.  While outside his vehicle, Plaintiff continued to slur his speech and exhibited difficulty standing.  Id. ¶ 5.  Plaintiff refused Officer Lysand's request to submit to a Breathalyzer request.  Id.  Nevertheless, based on his observations of Plaintiff before and after the traffic stop, Officers Lysand believed that Plaintiff was operating his motor vehicle while under the influence of alcohol in violation of Vehicle Code section 23152(a), and placed him under arrest.  Id. ¶ 6.

At around 1:50 a.m., Officer Lysand searched Plaintiff's person as a search incident to arrest.  Id. ¶ 7.  During the search, the officer found a cellular telephone in Plaintiff's pocket.  Id.  He placed the telephone in a plastic bag to be taken to the police station where it could be returned to Plaintiff upon his release.  Id.  Officer Lysand placed Plaintiff in the back of his patrol car with the intention taking him to the police station for booking.  Id.  At approximately 2:00 a.m., Officer Bilcich arrived on the scene.  Bilcich Decl. ¶ 2, Dkt. 35.

Officer Bilcich's sole involvement was towing Plaintiff's car.  Id.  Shortly thereafter, Plaintiff was transported to the Cotati police station for booking.

During the course of their contact, Officer Lysand asked Plaintiff for his driver's license and saw that it was issued in Illinois.  Id. ¶ 8.  According to Officer Lysand, Plaintiff was convinced that he knew that he was from Illinois before looking at his license.  Id.  Plaintiff also made comments to the effect that he was a "whistleblower" in a scandal involving former Illinois Governor Rod Blagojevich.  Id.  Based on the course of their conversation, it was apparent that Plaintiff believed that he had been pulled over and arrested because of his purported whistleblower status.  Id.[1]

### 2. Events at the Police Station

At the police station, Plaintiff continued "making various incoherent and irrational statements regarding being a whistleblower in Illinois, and claiming that there was some connection between politics and the government agencies in Illinois, and his arrest in Cotati."  Houts Decl. ¶ 3.  According to Plaintiff, the officers "informed him several times that he was 'backdoored by Linda' and asked if he had 'pissed off a bunch of lawyers.'"  Compl. ¶ 21.  Plaintiff speculates that "the meaning of these statements, acts and omissions was that Plaintiff had been designated as a target for arrest by CPD prior to any of his alleged wrongdoing and that CPD intended to effect and was effecting retaliation."  Id.

While at the station, Sergeant Houts searched Plaintiff's cellular telephone to locate someone to take Plaintiff home.  Houts Decl. ¶ 4.  Sergeant Houts explains that "we have discretion to release certain arrestees to a responsible family member or friend under these conditions and given Mr. Watters' erratic state, I felt that this would be beneficial for him."  Id.  On this basis, Sergeant Houts "briefly scrolled through [the Plaintiff's] cell phone which had been obtained by Officer Andrew Lyssand incident to plaintiff's arrest. . . . From that phone, [he] placed one or two calls to family members who were identified as such on

---

[1] Officers Lyssand and Bilcich deny any knowledge of Plaintiff's alleged involvement in any "whistleblower" activities.  Lyssand Decl. ¶ 9; Bilcich Decl. ¶ 3, Dkt. 35.

the phone itself, but [does] not recall if [he] was able to reach anyone." Id. Sergeant Houts denies searching any other aspect of Plaintiff's telephone, reviewing Plaintiff's emails or other information, and denies obtaining any evidence. Id. ¶ 5.

Plaintiff claims that Sergeant Houts did, in fact, make contact with at least one of the telephone numbers that he dialed. In particular, the Complaint alleges that at approximately 2:30 a.m. on the evening of his arrest, a Cotati police officer "called an Illinois telephone number retrieved from Plaintiff's smart-phone. . . . The number was Plaintiff's ex-wife's number and Plaintiff's eight-year-old son was awakened by the phone call." Compl. at ¶ 23. Plaintiff was detained at the Cotati police station prior to being transferred to the Sonoma County Main Adult Detention Facility for further processing. Houts Decl. ¶¶ 4-5.

### 3. Criminal Proceedings

The Sonoma County District Attorney's Office charged Plaintiff with driving under the influence of alcohol in violation of California Vehicle Code section 23152(a). See Defs.' Request for Judicial Notice, Ex. A, Dkt. 30. Plaintiff also was charged with failure to submit to a chemical screening test in violation of California Vehicle Code sections 23577, 23578, and 23538(b)(2). Id. Plaintiff pled not guilty and the case proceeded to trial. On February 25, 2010, the jury found Plaintiff guilty of driving under the influence and rendered a "true" finding that he violated Vehicle Code sections 23577, 23578, and 23538(b)(2). Id. Ex. B. Plaintiff neither appealed his conviction, nor was his conviction overturned. Henkels Decl. Ex. A at 145:14-18, 146:8-12, Dkt. 32.

### B. PROCEDURAL HISTORY

On June 10, 2010, Plaintiff, through counsel, filed the instant action against the City of Cotati, CPD, Sergeant Houts and Officers Lyssand and Bilcich. The Complaint alleges three claims for relief: (1) violation of 42 U.S.C. § 1983 based on unlawful search and seizure during the arrest (against the City, CPD, Sergeant Houts and Officer Lyssand); (2) violation of 42 U.S.C. § 1985 for conspiracy to violate civil rights (against the City, CPD and Officers Houts and Lyssand); and (3) violation of 42 U.S.C. § 1986 for failure to

1  prevent a violation of civil rights (against all Defendants).  Plaintiff's counsel withdrew as
2  counsel of record on April 6, 2011, Dkt. 27, and since that time, Plaintiff has been pro se.
3     On April 12, 2011, the Defendants filed a Motion for Summary Judgment, or in the
4  alternative, Partial Summary Judgment, with respect to the claims alleged against them.
5  Dkt. 29.  Plaintiff filed a Response to Defendants' Motion for Summary Judgment on June
6  24, 2011.  Dkt. 42.  Defendants filed a Reply on July 15, 2011.  Dkt. 44.  The matter has
7  been fully briefed and is ripe for adjudication.

8  **II.      LEGAL STANDARD**

9     Federal Rule of Civil Procedure 56 provides that a party may move for summary
10 judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P.
11 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no
12 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
13 law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The movant
14 bears the initial burden of demonstrating the basis for the motion and identifying the
15 portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions
16 on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett,
17 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts
18 of materials in the record").  If the moving party meets this initial burden, the burden then
19 shifts to the non-moving party to present specific facts showing that there is a genuine issue
20 for trial.  See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
21 475 U.S. 574, 586-87 (1986).

22    "On a motion for summary judgment, 'facts must be viewed in the light most
23 favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'"
24 Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting in part Scott v. Harris, 550 U.S.
25 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under
26 the governing law will properly preclude the entry of summary judgment.  Factual disputes
27 that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.  A
28 factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at

1  250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from
2  which a reasonable jury, viewing the evidence in the light most favorable to that party,
3  could resolve the material issue in his or her favor. Id. "If the evidence is merely
4  colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-
5  50 (internal citations omitted). Only admissible evidence may be considered in ruling on a
6  motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

## III. DISCUSSION

### A. TRAFFIC STOP

Title 42, United States Code, section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States.'" Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. See Graham v. Connor, 490 U.S. 386, 393-94 (1989). To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

To maintain a conspiracy claim § 1985(3), a plaintiff must allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Broth., of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983); see Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992). "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation," and thus is dependent upon

- 6 -

1  the existence of a viable § 1985 claim.  Sanchez v. City of Santa Ana, 936 F.2d 1027, 1040
2  (9th Cir. 1990).
3         An individual who has been convicted of a criminal offense is barred from bringing
4  a civil action which would imply the invalidity of the underlying conviction.  See Heck v.
5  Humphrey, 512 U.S. 477, 483-84 (1994).  In Heck, the Supreme Court has held that, "in
6  order to recover damages for an allegedly unlawful conviction or imprisonment, or for
7  other harm caused by actions whose unlawfulness would render a conviction or sentence
8  invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on
9  direct appeal, expunged by executive order, declared invalid by a state tribunal authorized
10 to make such determination, or called into question by a federal court's issuance of a writ
11 of habeas corpus."  512 U.S. at 486-87.  Thus, if a judgment in favor of a plaintiff on his
12 civil rights damages claims necessarily will imply the invalidity of his conviction or
13 sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the
14 conviction or sentence has already been invalidated.  Id. at 487.  "Heck applies equally to
15 claims brought under §§ 1983, 1985 and 1986."  McQuillon v. Schwarzenegger, 369 F.3d
16 1091, 1097 n.4 (9th Cir. 2004).
17        Here, Plaintiff alleges that Defendants violated § 1983 by effecting a traffic stop
18 "without reasonable suspicion or other legal reason or cause, for unfounded traffic
19 violations."  Compl. ¶¶ 29; see also id. ¶ 37a, 37c.  However, it is undisputed that Officer
20 Lyssand decided to pull Plaintiff over, inter alia, based on his suspicion that Plaintiff was
21 operating a motor vehicle while intoxicated.  Plaintiff subsequently was charged and
22 ultimately convicted by a jury of driving while under the influence of alcohol, in violation
23 of California Vehicle Code § 23152(a).  Plaintiff did not appeal his conviction nor has it
24 been set aside.  Henkels Decl. Ex A at 145: 14-18, 146:8-12.  A judgment in Plaintiff's
25 favor on his § 1983 and related § 1985 and 1986 claims which challenge the validity of the
26 traffic stop would necessarily undermine his criminal conviction.  As such, Plaintiff's claim
27 is barred by Heck.  See Szajer v. City of Los Angeles, 632 F.3d 607, 611 (9th Cir. 2011)
28 (claim alleging an illegal search and seizure of evidence that was used to secure a

1  conviction necessarily implies the invalidity of that conviction); Guerrero v. Gates, 442
2  F.3d 697, 703 (9th Cir. 2006) (plaintiff's conviction for possession of narcotics barred
3  claims for false arrest and malicious prosecution); Cabrera v. City of Huntington Park, 159
4  F.3d 374, 380 (9th Cir. 1998) (claims for false arrest and imprisonment barred by Heck
5  where plaintiff was convicted of disturbing the peace).

6        **B.**     **CELLULAR TELEPHONE**

7        Plaintiff also alleges that Defendants engaged in an unlawful search and seizure in
8  violation of the Fourth Amendment with respect to his cellular telephone. Compl. ¶¶ 29,
9  31, 37b, 44. As noted, Plaintiff's telephone was seized from Plaintiff's person by Officer
10 Lyssand as a search incident to arrest. At the police station, Sergeant Houts briefly scrolled
11 through the telephone numbers contained in Plaintiff's telephone in an effort to locate a
12 family member willing to pick him up from the police station. Houts Decl. ¶ 4.

13       To the extent that Plaintiff is alleging that Officer Lyssand violated his constitutional
14 rights by seizing his cellular telephone, such claim fails as a matter of law. United States v.
15 Edwards, 415 U.S. 800, 802 (1974) (holding that the Fourth Amendment permits
16 warrantless searches incident to custodial arrests); United States v. Ziller, 623 F.2d 562,
17 562 (9th Cir. 1980) ("[A] search of the contents of the wallet is likewise permissible as
18 being an incident to and part of a personal search."). And for the reasons discussed supra,
19 any claim that the seizure was incidental to an unlawful arrest is barred by Heck.

20       Plaintiff's claim that Sergeant Houts violated his Fourth Amendment rights by using
21 telephone numbers obtained from his cellular telephone in an effort to secure transportation
22 home for Plaintiff fares no better. The Fourth Amendment only prohibits *unreasonable*
23 searches and seizures. See Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 450
24 (1990). Reasonableness is determined by the context presented, which requires a balancing
25 of the need for the particular search against the invasion of personal rights that search
26 entails. Bell v. Wolfish, 441 U.S. 520, 558-59 (1979); Nunez v. Duncan, 591 F.3d 1217,
27 1227 (9th Cir. 2010). In particular, the scope of the particular intrusion, the manner in
28

1 which it is conducted, the justification for initiating it, and the place in which it is
2 conducted must be considered. <u>Bell</u>, 441 U.S. at 559.

3       Based on the record presented, the Court finds that the "search" of Plaintiff's cellular
4 was reasonable, as a matter of law. Sergeant Houts conducted only a limited search of
5 Plaintiff's telephone solely for the purpose of locating a family member who might know of
6 any of Plaintiff's possible medical conditions and to pick him up from the police station.
7 He did so solely out of concern for Plaintiff's safety, and to that end, only called one or two
8 persons. Sergeant Houts did not search any other aspect of Plaintiff's telephone nor did he
9 review Plaintiff's emails or other information. Aside from the one or two telephone
10 numbers called, no other information was obtained from Plaintiff's telephone. Given the
11 limited nature and purpose of Sergeant Hout's review, which is undisputed, the Court finds
12 that his conduct was reasonable within the meaning of the Fourth Amendment.

13     **C.**     **CRUEL AND UNUSUAL PUNISHMENT**

14       The Eighth Amendment's prohibition against cruel and unusual punishment applies
15 only after conviction. <u>Pierce v. Multnomah County, Oregon</u>, 76 F.3d 1032, 1042 (9th Cir.
16 1996). However, the same standards apply to pretrial detainees under the Due Process
17 Clause. See <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010). To
18 sustain such a claim, the law enforcement officer's conduct must be "so egregious, so
19 outrageous, that it may be fairly said to shock the contemporary conscience." <u>County of</u>
20 <u>Sacramento v. Lewis</u>, 523 U.S. 833, 848 n.8 (1998).

21       The Complaint alleges that Defendants engaged in cruel and unusual punishment
22 when Officer Lyssand and Sergeant Houts "proceeded to tell Plaintiff that he had been
23 targeted for this arrest, that he was 'backdoored by Linda' and asked if he pissed off a
24 bunch of lawyers,' and words to the effect that he had been targeted and to drop it."
25 Compl. ¶ 30. Setting aside that the import of these alleged statements is entirely unclear,
26 there is no evidence that either Defendant, in fact, made these statements. But even if these
27 statements were made, it is clear that they not so egregious as to shock the conscience.
28 There also is no evidence that Plaintiff was targeted for arrest based on his alleged

involvement in the matter involving former governor Blagojevich. Lyssand Decl. ¶ 9; Houts Decl. ¶ 6. Finally, any claim that Plaintiff's arrest was motivated by ill-will is barred by Heck.

### D. MONELL AND SUPERVISORY LIABILITY CLAIMS

The Complaint does not separately allege any claims against the City of Cotati or CPD, but instead, names them in the claims alleged against the individual Defendants. Nevertheless, to the extent Plaintiff is attempting to allege any claims for supervisory liability or under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), such claims may not be pursued in the absence of an underlying constitutional deprivation or injury. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability."). In view of the Court's determinations that Plaintiff has failed to demonstrate a triable issue of material fact in support of his underlying civil rights claims, it follows that Plaintiff's claims against the City of Cotati and CPD must fail as well.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendants' Motion for Summary Judgment is GRANTED. The Clerk shall close the file and terminate all pending matters and deadlines.

IT IS SO ORDERED.

Dated: October 13, 2011

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

WATTERS et al,

        Plaintiff,

  v.

CITY OF COTATI et al,

        Defendant.
_____/

Case Number: CV10-02574 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 13, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Martin Watters
1367 Miramonte Place
Rohnert Park, CA 94928

Dated: October 13, 2011
                                    Richard W. Wieking, Clerk
                                        By: LISA R CLARK, Deputy Clerk